UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA ALONSO and JAMES SAYLOR,

          Plaintiffs                    Case No.

   vs.                             Hon.

CITY OF BATTLE CREEK, DAVID WALTERS,
SUSAN BEDSOLE and JAMES BLOCKER,

    Jointly and severally,

    Defendants.

_____/

Pitt, McGehee, Palmer & Rivers PC
Michael L. Pitt   P-24429
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800 (phone)
(248) 398-9804 (facsimile)
mpitt@pittlawpc.com

_____/


**COMPLAINT FOR INJUNCTIVE RELIEF, MONEY DAMAGES AND JURY DEMAND**

Plaintiffs, MARIA ALONSO and JAMES SAYLOR, by and through their attorneys, PITT

McGEHEE PALMER & RIVERS, P.C., brings this action against defendants for the following

reasons:

### INTRODUCTION

1.    Plaintiff Maria Alonso ("Alonso"), is an Inspector with the Battle Creek Police

Department ("BCPD") who was suspended from BCPD and placed on paid administrative

leave on March 7, 2014 because the BCPD and City of Battle Creek ("City") Officials, in a City

1

engineered media presentation, publicly alleged that her association with plaintiff James Saylor ("Saylor"), the Deputy Chief of the BCPD, was creating an unlawful hostile work environment.

2.    Saylor was suspended from the BCPD and placed on paid administrative leave on March 7, 2014 because the BCPD and City officials, in the same City engineered media presentation, publicly alleged that his association with plaintiff Alonso was creating an unlawful hostile work environment.

3.    The orchestrated media event staged by the City painted a false and defamatory public image of Alonso and Saylor.

4.    The City's deliberate effort to use the media to damage the reputations of Alonso and Saylor, together with the simultaneous announcement of their suspensions, effectively ended their careers with the BCPD and constitutes a constructive termination of employment.

5.    Alonso, who is 42 years old and is unmarried with 18 years of service with the BCPD, and Saylor, who is 47 years old and unmarried with 24 years of service with the BCPD, allege in this lawsuit that their rights as public employees were violated by their terminations as well as the process used to accomplish the terminations. Their terminations constitute a violation of the:

- Free association  clause of the  First Amendment of the United States constitution;

- Substantive due process principles as embodied ino the 14th Amendment of the United States constitution;

- Procedural due process clause of the 14th Amendment of the United States constitution;

- Their liberty interests as protected by the 14th Amendment of the United States Constitution.

- Their contractual right to be terminated from employment with the BCPD only with " just cause."

6.      Alonso and Saylor seek as a remedy reinstatement to their former positions of Inspector and Deputy Chief, the removal from their personnel records any record of the termination and the process leading up to the their terminations, fair and reasonable compensation to cover their economic and non-economic losses and an injunction against the City and the BCBD prohibiting retaliation and any further interference with their protected activity or associations.

## PARTIES, JURISDICTION and VENUE

7.      The City is located in Calhoun County which is in this judicial district.

8.      David Walters ("Mayor Walters") is the Mayor of the City and he held this position during the time relevant to this case.  At all times relevant to this case he was acting under color of state law.  He is sued in his individual capacity for damages and in his official capacity for injunctive relief.

9.      Bedsole ("Bedsole") is the Interim City Manager and she held this position during the time relevant to this case.  At all times relevant to this case she was acting under color of state law and she is sued in his individual capacity for damages and in her official capacity for injunctive relief.

10.     James Blocker ("Blocker") is the Interim Chief of the BCPD and he held this position during the time relevant to this case. At all times relevant to this case he was acting under color of state law and he is sued in his individual capacity for damages and in his official capacity for injunctive relief.

11.     Venue in this court is proper because the City is located in this judicial district, all other defendants reside in the state of Michigan and all of the events in controversy occurred in this judicial district. 28 U.S.C. § 1391(b).

12.     Plaintiffs' federal cause of action arises under 42 U.S.C. § 1983 and 18 U.S.C. § 2707.  The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

13.     This court has supplemental jurisdiction over the state law claim of breach of employment agreement  because the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the case or controversy.  28 U.S.C. § 1367(a).

### STATEMENT OF FACTS

**A.      BACKGROUND INFORMATION  REGARDING ALONSO AND SAYLOR**

14.     Alonso began her employment with the BCPD as a Patrol officer on August 22, 1994.  On April 4, 1997, she resigned her employment with the BCPD.

15.     On March 9, 1999, Alonso was rehired as a Patrol Officer with the BCPD.  On July 12, 2002, Alonso was promoted to the position of Detective.

16.     On June 5, 2011, Alonso was promoted to the position of Deputy Inspector at the recommendation of BCPD Chief Jackie Hampton ("Chief Hampton").

17.     On December 6, 2011, Chief Hampton promoted Alonso to the position of Inspector.

18.     During her tenure with the BCPD, Alonso received three promotions and high marks on her annual/periodic written performance evaluations.

19.     A review of the 268 pages of her personnel file indicates that at no time during her 18 years of service to BCPD did she ever have her job performance, attitude, loyalty to BCPD or professional conduct questioned and she has not received any discipline of any type.

20.     Saylor began his employment with the BCPD on July 17, 1989 as a Patrol Officer with the BCPD.

21.     On November 10, 1996, Saylor was promoted to the position of Sargent.

22.     On March 30, 2003, Saylor was promoted to the position of Lieutenant.

23.     On August 29, 2004, Saylor was promoted to the position of Commander.

24.     On April 4, 2010, Chief Hampton promoted Saylor to the position of Deputy Chief.

25.     During his tenure with BCPD, Saylor received four promotions and high marks on his annual/periodic written performance evaluations.

26.     A review of 434 the pages of his personnel file indicates that at no time during his 24 years of service to BCPD did he ever have his job performance, attitude, loyalty to BCPD or professional conduct questioned and he has not received any discipline of any type.

**B.     DEREK WALTERS INCIDENT**

27.     In the spring/summer of 2013, BCPD Patrol Officer Derek Walters responded to a domestic relations incident.

28.     Derek Walters is the son of Mayor Walters.

29.     Departmental policy requires a Patrol Officer who responds to a domestic relations incident to prepare a written report of that incident before the end of his or her shift.

30.     Derek Walters asked his supervisor if he could be excused from writing the report of that incident before the end of his shift.  Derek Walters' request was denied and he was instructed to write the report before going home.

31.     Derek Walters then went to second supervisor and lied to the second supervisor by misrepresenting the seriousness of the domestic relation incident and further engaged in misconduct by failing to tell the second supervisor that he was given a direct order to finish the report before going home.

32.     As Inspector, Alonso was charged with the task of investigating Derek's handling of the report writing aspect of the domestic relations incident.  Saylor also participated in the investigation.

33.     Alonso gave Derek Walters a direct order not to share with anyone the charges against him and the investigation.

34.     The investigation confirmed that Derek Walters engaged in several egregious lies and Alonso, Saylor and Chief Hampton recommended his termination from BCPD.

35.     Mayor Walters, in response to this recommendation, advised members of the City administration that if his son was terminated he would obtain the services of an attorney.

36.     Mayor Walters' comment was proof to Alonso that Derek Walters engaged in further misconduct by violating the direct order not to share the incident or investigation with anyone.

37.     City attorney, Jill Steele, became involved and advocated for a suspension of Derek Walters in lieu of a termination.

38.     The Derek Walters investigation and discipline case was closed in late 2013 with Derek Walters receiving a suspension even though management of the BCPD recommended termination.

### C.      NATURE OF THE ALONSO AND SAYLOR RELATIONSHIP

39.     Prior to the start of 2014, Alonso and Saylor, who were departmental colleagues married to other people, had a close friendship for approximately 20 years.

40.     By January of 2014, Alonso and Saylor were divorced from their respective spouses and each became single parents.

41.     Chief Hampton noticed the deepening relationship between Alonso and Saylor causing him to counsel them that based on past practices of the BCPD, the potential romantic relationship between them would be permissible provided Alonso did not report directly to Saylor.

42.     Chief Hampton noted to Alonso and Saylor on many occasions that the custom and practice at BCPD was to permit romantic relationships between members of the BCPD provided the involved officers do not directly supervisor or report to the other.

43.     Chief Hampton advised Alonso and Saylor that he was happy for his two colleagues and that no City or departmental problems would arise if Alonso was not Saylor's direct report.

44.     In January, 2014, Hampton approached the City manager, Ken Tsuchiyama ("Tsuchiyama") who agreed to this arrangement.

45.     Chief Hampton announced his retirement date of January 31, 2014 in mid-January, 2014.

**D.     SAYLOR IS NAMED THE INTERIM CHIEF OF BCPD AND THEN QUICKLY REMOVED FROM THAT POSITION**

46.     Shortly after Chief Hampton announced his intention to retire, Tsuchiyama named Saylor as the next Interim Chief.

47.     Saylor was the only member of BCPD who met the qualifications for the Chief position.

48.     When Tsuchiyama informed Saylor that he would be the next Interim Chief, Tsuchiyama advised Saylor of a threat made by Mayor Walters.

49.     Tsuchiyama told Saylor that if he applied for the permanent Chief position, "Mayor Walters and others on the City Commission would disparage Saylor and Alonso by going to the media."

50.     Chief Hampton retired from the BCPD in late January, 2014.

51.     Shortly after Hampton's retirement, Saylor met with Tsuchiyama and Employee Relations Director Russ Claggett ("Claggett").

52.      Tsuchiyama and Claggett, after being apprised of the evolving relationship between Alonso and Saylor, approved in writing the reporting relationship suggested by former Chief Hampton.

53.     Within a few days of announcing that Saylor would be the new Interim Chief, Tsuchiyama publically announced that he was un-appointing Saylor and that a new Interim Chief would be named.

**E.   THE FORCED RESIGNATION OF TSUCHIYAMA AND PROMOTING BEDSOLE AND BLOCKER INTO THE POSTONS OF INTERM CITY MANAGER AND INTERIM CHIEF OF BCPD**

54.     After Tsuchiyama agreed to the new reporting chain of command for Alonso, Mayor Walters with Vice Mayor Deb Owens ("Owens") appeared at Tsuchiyama's office and engaged him in a conversation on a number of topics including his approval of his reporting relationship with Alonso.

55.     Mayor Walters and Vice Mayor Owens expressed disapproval with his decision to have Alonso report to him.

56.     Owens then asked Tsuchiyama "if he had given any thought to retirement?" When Tsuchiyama sought clarification of this comment, Mayor Walters advised him that "we have the votes to remove you."

57.     Tsuchiyama resigned on February 5, 2014.

58.     Shortly after the media picked up Tsuchiyama's resignation, Mayor Walters told members of the prosecutor's office that "there were more [separations] to come."

59.     At about the same time, Scott Marshall, a member of BCPD and close friend of Derek Walters, told members of BCPD that there were "two down [Tsuchiyama and Hampton] and two to go [Alonso and Saylor]. Just wait."

60.     Bedsole was named Interim City Manager on February 18, 2014.

61.     On February 25, 2014, Bedsole appointed BCPD Detective Jim Blocker as the Interim Chief.

62.     Blocker did not meet the qualifications for the position of Chief.

63.     Mayor Walters and his wife, along with City Commissioner Michael Sherzer, were former co-workers of Blocker and have remained close friends.

**F.    DEFENDANTS SUSPEND ALONSO AND SAYLOR AND STAGE A MEDIA EVENT TO RUIN THEIR REPUTATIONS AND PUBLIC IMAGE**

64.    On March 6, 2014, Bedsole, Blocker and other City officials orchestrated a media event to announce that Saylor and Alonso were suspended and placed on a paid administrative leave so that Bedsole and the City Attorney's Office could investigate "an alleged personal relationship [between Saylor and Alonso] that may have created a hostile work environment, thereby having a negative impact on the department and its personnel. Certain job performance issues are included."

65.    The orchestrated media event staged by the City painted a false and defamatory public image of Alonso and Saylor.

66.    The City's deliberate effort to use the media to damage the reputations of Alonso and Saylor, together with the simultaneous announcement of their suspensions, effectively ended their careers with the BCPD and constitutes a constructive termination of employment.

67.    From March 6, 2014 through the date of the filing of this complaint, the City of Battle Creek conducted a sham investigation in order to justify the constructive discharges of plaintiffs which took place on March 7, 2014.

**G.    ALONSO AND SAYLOR HAD A PROPERTY INTEREST IN THEIR POSITIONS BECAUSE THEY CLULD NOT BE TERMINATED WITHOUT JUST CAUSE.**

68.    During the time that Alonso and Saylor were non-represented members of the Command Staff of the BCPD, they possessed a property interest in their jobs because they were repeatedly advised by Chief Hampton they could not be terminated from employment without just cause.

69.     Chief Hampton was fully authorized by the City Manager and City Commission to advise Alonso and Saylor that they could be terminated only for just cause.

70.     Chapter 296 of the Battle Creek Code of Ordinances establishes as law a system of progressive discipline which states in part that "the City, in recognition of the concept of progressive discipline , shall apply discipline in the following manner:

       1.      Verbal reprimands…
       2.      Written reprimands…..
       3.      Suspensions…….
       4.      Dismissals……"

71.     The City did not have just cause to terminate Alonso or Saylor.

72.     The City did not follow its progressive discipline ordinance in terminating Alonso and Saylor.

**COUNT I**
**VIOLATION OF LIBERTY INTEREST**

73.     Alonso and Saylor incorporate the above allegations as if stated in full herein.

74.     Alonso and Saylor are public employees of the City of Battle Creek.

75.     The Fourteenth Amendment guarantees "due process of law" for any deprivation of life, liberty or property. U.S. Const. amend XIV § 1.

76.     A person's reputation, good name, honor and integrity are among the liberty interests protected by the Fourteenth Amendment if damage to one's reputation is caused by the government and is accompanied by some alteration of a right or status such as employment, professional licensing or future employment opportunities.

77.     The orchestrated media event made in conjunction with the decision to remove Alonso and Saylor from their positions were stigmatizing because the staged media

event asserted that Alonso and Saylor lacked personal integrity and that their conduct was creating unlawful working conditions for their colleagues in the BCPD.

78.     The media broadcast engineered by City officials further stated that Alonso and Saylor had job performance issues.

79.     Bedsole, Walters and Blocker knew or should have known that the orchestrated media broadcast contained in the widespread and permanently assessable news reports on TV, radio and the internet would stigmatize Alonso and Saylor and would probably impair their ability to obtain employment in their professions.

80.     The false claims against Alonso and Saylor contained in the media report generated by defendants are available to the public, prospective employers and other individuals seeking to retain Alonso's and Saylor's' services.

81.     Alonso and Saylor, prior to the damaging public broadcast, were entitled to a name clearing hearing.  This opportunity was not provided to Alonso and Saylor.

82.     The City has an unconstitutional policy of not providing its public employees with a name clearing hearing prior to taking adverse employment action and publishing stigmatizing information about the public employee.

83.     The decision to widely publish stigmatizing information about Saylor and Alonso before giving them a name clearing hearing was the decision of the highest decision makers within the City of Battle Creek and therefore the City is responsible for the harm caused by the implementation of this unconstitutional policy.

84.     Bedsole, Walters and Blocker knew that Alonso and Saylor had a constitutional right to a name-clearing hearing and with deliberate indifference did not provide plaintiffs with a hearing before the damage could take hold.

12

85.     As a result of the violation of their constitutional rights as alleged above, Alonso and Saylor have experienced non-economic injury both past and future in the nature of humiliation, loss of earning capacity, loss of reputation, embarrassment, mental anguish and emotional distress.

86.     The individual defendants violated plaintiffs' constitutional rights in a wilful, reckless and malicious manner exposing them to punitive damages.

87.     The Plaintiffs have experienced substantial and irreparable harm to their personal and occupational reputation; and they have and will continue to experience economic and non-economic losses resulting from this constitutional deprivation.

Accordingly, Alonso and Saylor seek the following relief from the court:

a.     An order reinstating plaintiffs to their former positions;

b.     An order enjoining defendants from retaliating against plaintiffs;

c.     An order enjoining defendants from further violation of plaintiffs' constitutional rights;

d.     An order awarding plaintiffs economic and non-economic damages;

e.     An order awarding plaintiffs statutory attorney fees and costs of litigation;

f.     An order of punitive damage against the individual defendants for their wilful, reckless and malicious violation of plaintiffs constitutional right; and

g.     An order granting plaintiffs such other relief as the court seems appropriate.

## COUNT II
## VIOLATION OF PROCEDURAL DUE PROCESS RIGHTS

88.     Alonso and Saylor incorporate the above allegations as if stated in full herein.

89.     Under the Fifth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment to the United States Constitution, Alonso and Saylor, as public sector employees, with a vested property interest in their employment, enjoyed a Constitutional right prior to release of stigmatizing information or termination and/or other significant discipline affecting her employment status, to receive procedural due process, including but not limited to, notice of the charges against them, an explanation of the employer's evidence against them, and a meaningful opportunity to present their side of the story.  This right to due process is usually referred to as a *Loudermill* hearing.

90.     Defendants suspended plaintiffs and directed a negative media campaign against plaintiffs causing their constructive discharge without giving them notice of the charges against them, an explanation of the employer's evidence against them, and a meaningful opportunity to present their side of the story.

91.     Defendant Walters' instigated the sham investigation as a means of terminating Alonso and Saylor in retaliation for their handling of the Derek Walters's investigation and discipline.

92.     The sham investigation was launched to find evidence, after plaintiffs' constructive discharge, justifying the media attack on plaintiffs' reputation and public image.

93.     A one-sided trial in absentia was conducted by the City. More than twenty-six witnesses were interviewed.  A court reporter was present for each interview.  A verbatim

transcript was prepared for each interview.  Alonso and Saylor did not have a representative at any of these interviews.

94.   Alonso and Saylor, through their counsel, objected to biased nature of investigation and requested that the City employ an entirely neutral and well trained investigator to lead the investigation.  This request was denied.

95.   Alonso and Saylor asked to have the benefit of counsel present when giving their statements as part of the investigation.  This request was denied,

96.   Alonso and Saylor asked for the documents generated as part of the investigation and which allegedly supported their terminations.  This request was denied.

97.   Alonso and Saylor asked for a hearing before a neutral decision maker before their terminations were implemented.  This request was denied.

98.   Alonso and Saylor, while suspended, were given letters on April 2, 2014 indicating that investigation confirmed the basis for the investigation.

99.   Alonso and Saylor, through their counsel, submitted to the defendants on April 4, 2014 a detailed rebuttal of the finding and requesting a *Loudermill* hearing where the Chief Hampton would be allowed to appear or plaintiffs would have a chance to present his affidavit.

100.   The defendants neither granted nor denied this request.  From April 4 until the filing of this complaint, requests for clarification of plaintiffs' request for a Loudermill hearing with input from Chief Hampton have been ignored.

101.   The City has an unconstitutional policy of not providing its public employees with a *Loudermill* hearing name prior to publishing stigmatizing information about the public employee or implementing serious discipline.

102.   The decision to widely publish stigmatizing information about Saylor and Alonso and to terminate them before giving them a *Loudermill* hearing was the decision of the highest decision makers within the City of Battle Creek and therefore the City is responsible for the harm caused by the implementation of this unconstitutional policy.

103.   The individual defendants violated plaintiffs' constitutional rights in a deliberately indifferent manner with wilful, reckless and malicious intent exposing them to punitive damages.

104.   As result of the denial of procedural due process, Alonso and Saylor were terminated causing them to experience economic injury in the nature of lost wages and benefits both past and future.  Alonso and Saylor have experienced non-economic injury both past and future in the nature of humiliation, loss of earning capacity, loss of reputation, embarrassment, mental anguish and emotional distress.

Accordingly, Alonso and Saylor seek the following relief from the court:

    a.     An order reinstating plaintiffs to their former positions;

    b.     An order enjoining defendants from retaliating against plaintiffs;

    c.     An order enjoining defendants from further violation of plaintiffs' constitutional rights;

    d.     An order awarding plaintiffs economic and non-economic damages;

    e.     An order awarding plaintiffs statutory attorney fees and costs of litigation;

    f.     An order of punitive damage against the individual defendants for their wilful and malicious violation of plaintiffs constitutional right; and

g.  An order granting plaintiffs such other relief as the court seems appropriate.

## COUNT III
## VIOLATION OF SUBSTANTIVE DUE PROCESS

105.  Alonso and Saylor incorporate the above allegations as if stated in full herein.

106.  Under the Fifth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment to the United States Constitution, Alonso and Saylor, as public sector employees, with a vested property interest in their employment, enjoyed a Constitutional right to non-arbitrary treatment.

107.  In violation of this right, defendants arbitrarily terminated plaintiffs' employment.

108.  The City has an unconstitutional policy of terminating its employees in an arbitrary manner.

109.  The decision to terminate plaintiffs in an arbitrary manner was the decision of the highest decision makers within the City of Battle Creek and therefore the City is responsible for the harm caused by the implementation of this unconstitutional policy.

110.  The individual defendants violated plaintiffs' constitutional rights in a deliberately indifferent manner with wilful, reckless and malicious intent exposing them to punitive damages.

111.  As result of the denial of substantive due process, Alonso and Saylor were terminated causing them to experience economic injury in the nature of lost wages and benefits both past and future.  Alonso and Saylor have experienced non-economic injury both past and future in the nature of humiliation, loss of earning capacity, loss of reputation, embarrassment, mental anguish and emotional distress.

Accordingly, Alonso and Saylor seek the following relief from the court:

    a.      An order reinstating plaintiffs to their former positions;

    b.      An order enjoining defendants from retaliating against plaintiffs;

    c.      An order enjoining defendants from further violation of plaintiffs' constitutional rights;

    d.      An order awarding plaintiffs economic and non-economic damages;

    e.      An order awarding plaintiffs statutory attorney fees and costs of litigation;

    f.      An order of punitive damage against the individual defendants for their wilful and malicious violation of plaintiffs constitutional right; and

    g.      An order granting plaintiffs such other relief as the court seems appropriate.

**COUNT IV**
**VIOLATION OF FIRST AMENDMENT PRIVACY AND ASSOCIATION RIGHTS**

112.     Alonso and Saylor incorporate the above allegations as if stated in full herein.

113.     Under the First Amendment of the United States constitution, as applied to the states through the 14th Amendment, Alonso and Saylor enjoyed rights of privacy and association which included the right of Alonso and Saylor to enter into and to maintain an intimate human relationship which must be secured against undue intrusions by the government.

114.     In violation of their rights guaranteed under the First Amendment, defendants unduly intruded into plaintiffs' intimate relationship without cause or justification and terminated their employment because of this intimate relationship.

115.    There is no rational basis for this intrusion because Alonso and Saylor were not in a reporting relationship, Alonso and Saylor had approval to maintain employment while they were involved in an intimate relationships and the City routinely permitted and tolerated intimate relationships among its employees.

116.    The decision to terminate plaintiffs in an arbitrary manner was the decision of the highest decision makers within the City of Battle Creek and therefore the City is responsible for the harm caused by the implementation of this unconstitutional policy.

117.    The individual defendants violated plaintiffs' constitutional rights in a deliberately indifferent manner with wilful, reckless and malicious intent exposing them to punitive damages.

118.    As result of the violation of their First Amendment rights as alleged above, Alonso and Saylor were terminated causing them to experience economic injury in the nature of lost wages and benefits both past and future. Alonso and Saylor have experienced non-economic injury both past and future in the nature of humiliation, loss of earning capacity, loss of reputation, embarrassment, mental anguish and emotional distress.

Accordingly, Alonso and Saylor seek the following relief from the court:

a.    An order reinstating plaintiffs to their former positions;

b.    An order enjoining defendants from retaliating against plaintiffs;

c.    An order enjoining defendants from further violation of plaintiffs' constitutional rights;

d.    An order awarding plaintiffs economic and non-economic damages;

e.    An order awarding plaintiffs statutory attorney fees and costs of litigation;

f.    An order of punitive damage against the individual defendants for their wilful and malicious violation of plaintiffs constitutional right; and

g.    An order granting plaintiffs such other relief as the court seems appropriate.

**COUNT V**
**VIOLATION OF JUST CAUSE EMPLOYMENT AGREEMENT**

119.   Alonso and Saylor incorporate the above allegations as if stated in full herein.

120.   At all times relevant to this case, Alonso and Saylor had a just cause employment relationship with the City.

121.   As just cause employees, Alonso and Saylor could not be terminated unless the City has just cause for doing so.

122.   The City terminated Alonso and Saylor without just cause.

123.   As result of the violation of their employment agreements as alleged above, Alonso and Saylor were terminated causing them to experience economic injury in the nature of lost wages and benefits both past and future.

Accordingly, Alonso and Saylor seek the following relief from the court:

a.    An order awarding plaintiffs economic and non-economic damages;

b.    An order awarding plaintiffs' attorney fees and costs of litigation; and

c.    An order granting plaintiffs such other relief as the court seems appropriate.

**COUNT VI**
**VIOLATION OF 18 U.S.C. § 2707-CLAIM AGAINST CITY ONLY**

124.    Alonso and Saylor incorporate the above allegations as if stated in full herein.

125.    The City, without notice to plaintiffs or their counsel, issued a non-judicial third party administrative subpoena to Apple for production of personal electronic accounts of Alonso and Saylor.

126.    Because the City is a governmental entity, a search warrant is required pursuant to 18 U.S.C. § 2703.

127.    The City has not secured or served on Apple a search warrant for these electronic files.

128.    Plaintiffs asked the City to withdraw the subpoena.  The City has refused.

Accordingly, pursuant to 18 U.S.C. § 2707(b), plaints seek to enjoin the production of this electronic file in the absence of a search warrant together with statutory  damages and attorney fees.


                          Pitt, McGehee, Palmer & Rivers PC

               By:      _/ s/ Michael L. Pitt P24429_____
                          Michael L. Pitt (P24429)
                          Attorney for Plaintiff
                          117 West Fourth Street, Suite 200
                          Royal Oak, Michigan 48067
                          (248) 398-9800
                          mpitt@pittlawpc.com

DATED:  April 11, 2014

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA ALONSO and JAMES SAYLOR,

        Plaintiffs                      Case No.

    vs.                                       Hon.

CITY OF BATTLE CREEK, DAVID WALTERS,
SUSAN BEDSOLE and JAMES BLOCKER,

    Jointly and severally,

        Defendants.
_____/
Pitt, McGehee, Palmer & Rivers PC
Michael L. Pitt   P-24429
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800 (phone)
(248) 398-9804 (facsimile)
mpitt@pittlawpc.com
_____/

**JURY DEMAND**

    Plaintiffs demand a trial by jury of all issues to the within causes of action.

                        Pitt, McGehee, Palmer & Rivers PC

                    By:       */ s/ Michael L. Pitt  P24429*
                              Michael L. Pitt (P24429)
                              Attorney for Plaintiff
                              117 West Fourth Street, Suite 200
                              Royal Oak, Michigan 48067
                              (248) 398-9800
                              mpitt@pittlawpc.com

DATED:  April 11, 2014