UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARIA ALONSO and JAMES SAYLOR,

        Plaintiffs,

vs.

THE CITY OF BATTLE CREEK,
DAVID WALTERS, SUSAN BEDSOLE,
and JAMES BLOCKER,

        Defendants.

Case No. 1:14-cv-0400

Hon. Chief Judge Paul L. Maloney

**ORAL ARGUMENT
REQUESTED**

---

Michael L. Pitt
PITT, McGEHEE, PALMER & RIVERS, PC
117 West Fourth Street, Ste. 200
Royal Oak, Michigan  48067
Telephone:  (248) 398-9800
mpitt@pittlawpc.com
*Attorneys for Plaintiffs*

Jill H. Steele
Brad H. Sysol
City of Battle Creek
10 N. Division Street, Ste. 207
Battle Creek, Michigan  49016-1717
Telephone:  (269) 966-3385
jhsteele@battlecreekmi.gov
bhsysol@battlecreekmi.gov
*Attorneys for Defendants*

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM, MOOTNESS,
AND FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES & EXHIBITS…....………………..……………………….iii

INTRODUCTION…..………………..………………………………………………1

RELEVANT ALLEGATIONS AND FACTS…..…………………………………...2

LEGAL ARGUMENT …………………………………………………………………4

I.      Standard of Review Applicable to Rule 12(b)(6) Motions …………………………4

II.     Plaintiffs' Claim for Deprivation of Liberty Interests Under the Due Process Clause Fails
        as a Matter of Law ……………………………………………..………………...5

        A.      Defendants Did Not Make Any Stigmatizing Statements in Conjunction With The
                Termination of Plaintiffs' Employment…………………………………………...6

        B.      The City's Public Statements Were Not Stigmatizing……………………………8

        C.      Plaintiffs Had No Right To A Name-Clearing Hearing…………………………....10

        D.      Plaintiffs Have Failed to Show Than Any Statements By Defendants Were
                Actually False……………………………………………………………....10

III.    Plaintiffs' Claim for Violation of Due Process Rights Under The Fourteenth Amendment
        Fails As A Matter of Law……………………………………………………..…11

        A.      Plaintiffs Have Failed to Plead a Property Interest Protected Under The
                Fourteenth Amendment……………………………………………………11

        B.      Plaintiffs Were Provided the Amount of Process Required……………………...13

IV.     Plaintiffs' Substantive Due Process Claim Fails as a Matter of Law Because Their Public
        Employment Is Not A Constitutionally-Protected Fundamental Interest And They Have
        Not Pled Conduct That "Shocks the Conscience"…………………………….....…14

V.      Plaintiffs' Claim for Violation of First Amendment Privacy and Association Rights Fails
        as a Matter of Law Because The City Had a Rational Basis to Prohibit An Intimate
        Relationship Between Two of the Highest Ranking Officers in the Battle Creek Police
        Department……………………………………………………………………17

VI.     Plaintiffs' Claim for Breach of Just Cause Employment Contract Should Be Dismissed
        for Failure to State a Claim and Because There Is No Material Question of Fact That
        They Were Terminated For Just Cause………………………………………………..20

A.      The Complaint Does Not Adequately Allege Just Cause Employment………...20

B.      There Is No Question of Fact That The City Had Just Cause to Terminate
        Plaintiffs' Employment……………………………………………………..22

VII.    Plaintiffs' Federal Stored Communications Act Claim Should Be Dismissed as Moot and
        Because It Fails as a Matter of Law………………………………………...…….24

CONCLUSION………………………………………………………………………..25

## <u>INDEX OF AUTHORITIES & EXHIBITS</u>

**FEDERAL CASES**

*Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003)……………………………………............17

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001)……………………………………......vii

*Anderson v. City of LaVergne*, 371 F.3d 879 (6th Cir. 2004)……………….……..…..…....18, 19

*Anderson v. Union Pac. R.R. Co.*, 359 Fed. Appx. 800 (9th Cir. 2009)………………...……22, 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………..…..1, 5, 11, 21

*Awrey v. Gilbertson*, 2011 U.S. Dist. LEXIS 62004 (E.D. Mich. 2011)…………………...…10

*Beecham v. Henderson County*, 422 F.3d 373 (6th Cir. 2005)……………………………18, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………1, 5, 11, 21

*Bolen v. E.I. Du Pont de Nemours & Co.*, 1993 U.S. App. LEXIS 1970 (6th Cir. 1993)………..24

*Bowers v. City of Flint*, 325 F.3d 758 (6th Cir. 2003)………………………………………....16

*Brown v. City of Niota*, 214 F.3d 718 (6th Cir. 2000)……………………………………………12

*Calovecchi v. Kaufmann*, 1994 U.S. Dist. LEXIS 8356 (W.D. Mich. 1994)…………………7, 12

*Cantanzaro v. Harry*, 848 F.Supp.2d 780 (W.D. Mich., 2012)……………………………………16

*Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990)…………………………………….…....15

*Chilingirian v. Boris*, 882 F.2d 200 (6th Cir. 1989)…………………………………………..5

*Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985)……………….....……………..12, 13, 14

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)…………………………………………....16

*Delaney v. UPS*, 2008 U.S. Dist. LEXIS 49103 (W.D. Mich. 2008)…………………………....22

*Devlin v. Kalm*, 531 fed. Appx. 697 (6th Cir. 2013)…………………………….……......13

*Edwards v. California University*, 156 F.3d 488 (3rd Cir. 1998)………………………….....7

*EJS Properties, LLC v. City of Toledo,* 698 F.3d 845 (6th Cir. 2012)..........................17

*Experimental Holdings, Inc. v. Farris*, 503 F.3d 514 (6th Cir. 2007)……………………….....11

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004)…………………………………….…………....14

*Freeman v. Unisys Corp.*, 898 F. Supp. 485 (E.D. Mich. 1995)……………………………….22

*Gault v. City of Battle Creek*, 73 F. Supp. 2d 811 (W.D. Mich., 1999)………………………….20

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012)…………………………………....17

*Gray v. Fed. Bureau of Prisons*, 2013 U.S. Dist. LEXIS 133849 (W.D. Mich. 2013)……........24

*Greer v. Detroit Public Schools*, 507 Fed. Appx. 567 (6th Cir. 2012)……………………….8, 9

*Gregory v. Hunt*, 24 F.3d 781 (6th Cir. 1994)……………………………………………………….5

*Hange v. City of Mansfield*, 257 Fed. Appx. 887 (6th Cir. 2007)………………..……...15, 16

*Haywood v. Schwan's Sales Enters.*, 1996 U.S. Dist. LEXIS 4678 (W.D. Mich., 1996)............20

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999)……………………………….....12

*Jefferson v. Jefferson County Pub. School Sys.*, 360 F.3d 583 (6th Cir. 2004)……………......14

*Joelson v. U.S.*, 86 F.3d 1413 (6th Cir. 1996)…………………………………………..……….5

*Johnson v. City of Battle Creek*, 2005 U.S. Dist. LEXIS 40300
(W.D. Mich. 2005)……………………………………………………....…9, 12, 21, 22

*Kurincic v. Stein, Inc.*, 30 Fed. Appx. 420 (6th Cir. 2002)……………………………………23

*Ky. Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989)……………………………...…12

*Lake Michigan College Fed. of Teachers v. Lake Mich. Cmty. College*,
518 F.2d 1091 (6th Cir. 1975)……………………………………………………....…8, 9

*Lisle v. Metro Govt. of Nashville & Davidson County*, 73 Fed. Appx. 782 (6th Cir. 2003)………6

*Ludwig v. Bd. of Trustees*, 123 F.3d 404 (6th Cir. 1997)……………………………..…8, 10, 12

*Machisa Design Services v. Columbus City Bd. of Ed.*,
2014 U.S. App. LEXIS 7748 (6th Cir. 2014)…………………………….……………....6

*Mileski v. City of Barberton*, 2006 U.S. Dist. LEXIS 15837 (N.D. Ohio 2006)…………….....17

*Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996)………………………………....……...19

*Paul v. Davis*, 424 U.S. 693 (1976)……………………………………………………….....5

*Quinn v. Shirey*, 293 F.3d 315 (6ᵗʰ Cir. 2002)……………………………….....5, 6, 8, 9, 10

*Reno v. Flores*, 507 U.S. 292 (1993)…………………………………………………..15

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984)………………………………....17, 18

*Rochin v. California*, 342 U.S. 165 (1952)……………………………………..…....…….16

*Ross v. Michigan State University Bd. of Trustees*,
2012 U.S. App. LEXIS 17338 (6ᵗʰ Cir. 2012)……………………………..……….7, 12

*Rudley v. Bank of America Home Loans Servicing, LP*,
2013 U.S. Dist. LEXIS 76406 (W.D. Mich. 2013)……………………..……………..…....vii, 8

*Rush v. United Technologies*, 930 F.2d 453 (6ᵗʰ Cir. 1995)…………………………………..22

*Speiser v. Engle*, 107 Fed. Appx. 459 (6ᵗʰ Cir. 2004)……………………………………14

*Sullivan v. Brown*, 544 F.2d 279 (6ᵗʰ Cir. 1976)………………………………………….7

*Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339 (6ᵗʰ Cir. 1992)…………………..……….15

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)…………………………………..….12

*Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009)……………………...…….5

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)……………………………………15

*Washington v. Glucksberg*, 521 U.S. 702 (1997)……………………………………….15

*Williams v. CitiMortgage, Inc.,* 498 Fed. Appx. 532 (6ᵗʰ Cir. 2012)………………………....vii, 8

*Williams v. Detroit Bd. of Education*, 226 Fed. Appx. 446 (6ᵗʰ Cir. 2007)……………..…..7, 12

*Young v. Twp. of Green Oak*, 471 F.3d 674 (6ᵗʰ Cir. 2006)…………………………………15

*Ziem v. Zehnder*, 2005 U.S. Dist. LEXIS 46026 (E.D. Mich. 2005)………………………….16

**STATE CASES**

*Champion v. Nationwide Sec.*, 450 Mich. 702; 545 N.W.2d 596 (1996),
*overruled on other grounds* 490 Mich. 1 (2011)…………………………………………………7

*Lytle v. Malady*, 458 Mich. 153; 579 N.W.2d 906 (1998)…………………………………....20, 21

*Rood v. General Dynamics Corp.*, 444 Mich. 107; 507 N.W.2d 591 (1993)…………………....20

*Rowe v. Montgomery Ward & Co*., 437 Mich. 627; 473 N.W.2d 268 (1991)……………..…21

**STATUTES, COURT RULES & MISCELLANEOUS AUTHORITIES**

18 U.S.C. §2701……………………………………………………………………………24

18 U.S.C. §2701(a)……………………………………………………………………..…..25

18 U.S.C. §2703(2)……………………………………………………………………....…25

18 U.S.C. §2703(3)………………………………………………………………………...25

18 U.S.C. §2707………………………………………………………………..…………...1

Fed. R. Civ. P. 8(a)(2)………………………………………………………………..…..5

Fed. R. Civ. P. 12(b)(1)…………………………………………………………………24

Fed. R. Civ. P. 12(b)(6)……………………………………………………………vii, 1, 4

Fed. R. Civ. P. 56………………………………………………………………..2, 22

City of Battle Creek Ordinances, Section 296.02……………………………………....21, 22

City of Battle Creek Ordinances, Section 296.03……………………………………....22, 23

**EXHIBITS ATTACHED AS PART OF THE PLEADINGS ON THE 12(b)(6) MOTION TO DISMISS:**[1]

Exhibit "C" – Press Release by the Interim City Manager dated March 7, 2014

Exhibit "E" – Letter from the City of Battle Creek to James Saylor dated April 2, 2014

Exhibit "F" – Letter from the City of Battle Creek to Maria Alonso dated April 2, 2014

Exhibit "G" – Letter from Attorney Pitt to the City of Battle Creek dated April 4, 2014

Exhibit "N" – Original and Amended Subpoenas for Records to Apple, Inc.

**EXHIBITS ATTACHED IN SUPPORT OF MOTION TO DISMISS FOR MOOTNESS AND PARTIAL SUMMARY JUDGMENT:**

Exhibit "A" – Relevant Portions of the Transcript of the City's Interview of James Saylor

Exhibit "B" – Relevant Portions of the Transcript of the City's Interview of Maria Alonso

Exhibit "D" – Affidavit of Daniel M. Ryan, Chief Information Officer, City of Battle Creek

Exhibit "H" – Letter from the City of Battle Creek to James Saylor dated April 23, 2014

Exhibit "I" – Letter from the City of Battle Creek to Maria Alonso dated April 23, 2014

Exhibit "J" – Letter from the City of Battle Creek to James Saylor dated April 29, 2014

Exhibit "K" – Letter from the City of Battle Creek to Maria Alonso dated April 29, 2014

Exhibit "L" – Electronic Communications Usage Policy for the City of Battle Creek

Exhibit "M" – Letter to Apple, Inc., dated April 22, 2014, Suspending Records Subpoenas

---

[1] When reviewing motions under Rule 12(b)(6), the Court is permitted to consider and construe information contained in documents referred to in the complaint, even though not attached to the complaint, that are central to Plaintiffs' claims. *Amini v. Oberlin College*, 259 F.3d 493, 502-503 (6th Cir. 2001) (holding that the district court "erred in failing to consider information contained in the plaintiff's EEOC filing"). Such documents are considered "part of the pleadings" for purposes of 12(b)(6). *Id.* at 502. Moreover, "[a] court is not bound to accept unwarranted 'facts' or 'inferences' which 'contradict documentary evidence appended to, or referenced within, the plaintiff's complaint." *Rudley v. Bank of America Home Loans Servicing, LP*, 2013 U.S. Dist. LEXIS 76406 at *1 (W.D. Mich. 2013). Rather, "the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 Fed. Appx. 532, 536 (6th Cir. 2012).

## INTRODUCTION

Plaintiffs are the former Deputy Chief of Police and Police Inspector of the Battle Creek Police Department (BCPD). They were both at-will employees, as are all non-represented employees of the City, but allege here for the first time that they were orally promised just cause employment by the former Chief of Police. Shortly after being placed on paid administrative leave and *before* any adverse employment action against them, Plaintiffs filed this lawsuit and a First Amended Complaint (FAC or Complaint) (ECF 8) asserting the following claims: Count I – Violation of Liberty Interest; Count II – Violation of Procedural Due Process Rights; Count III – Violation of Substantive Due Process Rights; Count IV – Violation of First Amendment Privacy and Association Rights; Count V – Violation of Just Cause Employment Agreement; and Count VI – Violation of 18 U.S.C. §2707 (*i.e.,* the federal Stored Communications Act).

Each of these claims fail to satisfy the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Complaint contains many legal conclusions couched as factual allegations, but no facts that even if accepted as true would "state a claim for relief that is plausible on its face." *Twombly* at 570. Plaintiffs' FAC, therefore, should be dismissed in its entirety under Rule 12(b)(6).

Plaintiffs' claim for violation of their purported just-cause employment relationship should also be dismissed, assuming for purposes of this motion only they were not at-will, on the additional ground that there is no genuine dispute of material fact that the City had just cause to terminate their employment. The following facts are not in dispute: Immediately after being placed on paid leave and told that the City was investigating concerns that their personal relationship was negatively impacting the department and its personnel, Plaintiffs remotely wiped (*i.e.,* erased!) their city-issued iPads that they were required to leave with the City, thereby

obstructing the investigation.  They *admit* wiping the iPads, which violates both a City ordinance and employee-policy.  This type of misconduct is unacceptable by any employee of the City, but especially by individuals holding two of the highest offices in the City's law enforcement agency.  Accordingly, the City should also be granted summary judgment on Count V under Rule 56.

Finally, as more fully explained below, Plaintiffs' claim that the City violated the federal Stored Communications Act (Count VI) should also be dismissed as moot.  Plaintiffs concur.

<u>**RELEVANT ALLEGATIONS AND FACTS**</u>

Plaintiffs James Saylor and Maria Alonso were, respectively, the Deputy Chief of Police and Police Inspector of the BCPD.  (FAC ¶¶ 17 and 24).  On March 5, 2014, they were placed on paid administrative leave pending an official internal city-investigation regarding concerns that their personal relationship was having a negative impact on the BCPD and its personnel.  (FAC ¶¶ 1 and 2).  At separate meetings with City officials, they were told they were being placed on paid leave pending a city investigation into allegations of a hostile work environment arising from their personal relationship.  (See Ex. A at pp 10-11 and Ex. B at p. 8).  Saylor and Alonso were required to leave their city-issued and city-owned iPads, among other items, at the BCPD.  (Ex. A at pp 12-15 and Ex. B at pp. 9-11).

Two days later, City officials held a press conference, accepting no questions, to correct rank speculation in the media as to why Saylor and Alonso were placed on leave.  At that conference, interim City Manager, Susan Bedsole, made in pertinent part the following statement:

> The purpose of this press conference is to provide information regarding our process and to correct some misinformation that is being reported.  * * *
>
> This is an administrative investigation prompted by concerns brought to the attention of City administration; it is not a criminal investigation.  It is not an

internal investigation being conducted by the police department.   The investigation is being conducted by the Human Resources manager with assistance from the City Attorney's office.   This is part of our routine business and we have an obligation to investigate such workplace concerns.

The Deputy Chief and the Police Inspector have been placed on paid administrative leave pending the conclusion of the investigation.   The placement of personnel on administrative leave is not an indication of any type of wrongdoing.   It is a tool used to remove the employee from the situation and allow the City to conduct a full investigation in a fair and expeditious manner. Paid administrative leave is not unusual in preliminary investigative situations because the employer is merely dealing with allegations.   If allegations are not substantiated, then the employee has not been denied the right to compensation during the investigation.

The investigation relates to an *alleged* personal relationship that *may have created* a hostile work environment, thereby having a negative impact on the department and its personnel.   Certain job performance issues are also included.   Prompt investigation and resolution of these concerns is critical given the nature of these high-level positions and the responsibilities involved.

(See Press Release attached as Ex. C and FAC ¶ 64) (emphasis added).  Saylor and Alonso allege that this statement—an "orchestrated media event"—"painted [them in] a false and defamatory public image" and ruined their "reputations . . . , effectively ending their careers with the BCPD and constitutes a constructive termination of employment."  (FAC ¶¶ 65 and 66)

On March 11 of the following week as part of the internal investigation, City officials drove to a location where Saylor and Alonso's city-issued iPads couldn't connect to the internet to prevent any automatic "wipe" commands; *i.e.,*  a command to erase all data on the device. (See Ex. D at ¶¶ 2-3).  When the iPads were powered up, they were already wiped and left in a factory default setting.  (*Id.* at ¶ 4).  During their interviews as part of the City's investigation, Saylor and Alonso both admitted that they remotely wiped their iPads immediately after being placed on leave; even though the iPads were passcode protected and knowing they were left with City officials at the BCPD.  (Ex. A at pp. 12-16; Ex. B at pp.10-12).

On April 2, 2014, after interviewing at least 26 witnesses (FAC ¶ 114) (at that time) in what Plaintiffs allege was a "sham investigation" (*id.* at ¶ 113), Saylor and Alonso were given letters that (a) notified them of the charges against them (including, but not limited to, obstructing the City's investigation by wiping their city-issued iPads); (b) described the evidence gathered; and (c) provided them an opportunity to reply orally or in writing (*id.* at ¶ 119).  Copies of the letters are attached hereto as Exhibits E and F.  Two days later, Saylor and Alonso, through their attorney, submitted a 17-page response (attached to this brief as Ex. G), and asked the City to interview retired Chief of Police Jackie Hampton before making a final decision.  (*Id.*, see also FAC at ¶ 120).

Nearly three weeks later on April 23 and after further investigation and interviewing former Chief Hampton, the City advised Saylor and Alonso that it still intended to terminate their employment for, among other reasons, the admissions that they remotely wiped their city-issued iPads after being placed on paid leave.  (See Exs. H and I).  On April 29, the City provided written notice of a final decision to terminate Plaintiffs' employment.  (See Exs. J and K).

Plaintiffs filed this lawsuit weeks *before* their termination alleging, among other things, that they were constructively discharged by being placed on paid administrative leave coupled with the City's March 7 press conference (see ECF 1 at ¶¶ 2-4), and that Defendants violated various constitutional rights (*id.* at ¶ 5).  They also filed a First Amended Complaint, again *before* their actual terminations, asserting essentially the exact same claims.  (ECF 8)  For the reasons below, this lawsuit should be dismissed in its entirety.

## LEGAL ARGUMENT

I.    **Standard of Review Applicable to Rule 12(b)(6) Motions.**

"[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's

elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly, supra*). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly* at 555.  Drawing on their "judicial experience and common sense," courts also need not accept as true alleged invidious motivations that are simply not plausible "given more likely explanations." *Ashcroft, supra* at 681.  And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal cites omitted).

## II.   Plaintiffs' Claim for Deprivation of Liberty Interests Under The Due Process Clause Fails As A Matter Of Law.

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law."  "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989).  To establish deprivation of a reputational liberty interest, a plaintiff "must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession." *Joelson v. U.S.*, 86 F.3d 1413, 1420 (6th Cir. 1996).  Allegations of incompetence, neglect of duty or malfeasance do not reach this threshold. *Gregory v. Hunt*, 24 F.3d 781, 788 (6th Cir. 1994).  Allegations of an "interest in reputation alone" also do not invoke due process. *Paul v. Davis*, 424 U.S. 693, 711 (1976).  Instead, "[s]ome alteration of a right to status 'previously recognized by state law,' such as employment, must accompany the damage to reputation." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (citing *Paul, supra*).

5

Consistent with these principles, the Sixth Circuit has identified the following five elements that must be satisfied before a public employee's liberty interest is at stake:

1.) A stigmatizing statement *made in conjunction with the plaintiff's termination from employment;*

2.) A stigmatizing statement that concerns *more than just improper or inadequate job performance, incompetence, neglect of duty or malfeasance;*

3.) The stigmatizing statements were made public;

4.) The statements *were false;* and

5.) The public employer voluntarily made the statements public.

*Quinn, supra* at 320 (citations omitted) (emphasis added).  If these five elements are met, a plaintiff must then show they "requested a name-clearing hearing and [were] denied that hearing."  *Id.*; see also *Machisa Design Services v. Columbus City Bd. of Ed.*, 2014 U.S. App. LEXIS 7748 at *9-10 (6th Cir. 2014).

In Count I, Plaintiffs' assert a claim for deprivation of reputational-liberty interests.  For the reasons below, this claim fails as a matter of law.

**A.    Defendants Did Not Make Any Stigmatizing Statements in Conjunction With The Termination of Plaintiffs' Employment.**

Plaintiffs allege that city officials "orchestrated a media event to announce that Saylor and Alonso were suspended and placed on a paid administrative leave" pending an internal investigation about concerns that their relationship "may have created a hostile work environment" and other "job performance" issues.  (See FAC, ¶ 64).  This allegation—that the City made a statement in conjunction with placing Plaintiffs on *paid administrative leave*, not termination—is fatal to their claim.  "In every case upholding a liberty claim, termination was a necessary pre-condition."  *Lisle v. Metro Govt. of Nashville & Davidson County*, 73 Fed. Appx. 782, 788 (6th Cir. 2003); see also *Quinn, supra* at 320 ("A name-clearing hearing is required only

6

if the employer creates a false and defamatory impression about a particular employee in connection with his termination.") (cite omitted). Statements made in connection with placing an employee on paid administrative leave, on the other hand, does not invoke due process. *Calovecchi v. Kaufmann*, 1994 U.S. Dist. LEXIS 8356 at * 22 (W.D. Mich. 1994).[2]

In an attempt to side step this legal deficiency, Plaintiffs claim that the City's "orchestrated media event . . . effectively ended their careers with the [BCPD] and constitutes a constructive termination of employment." (FAC at ¶¶ 65-66) This also fails as a matter of law. Under Michigan law, a constructive discharge occurs "when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Williams v. Detroit Bd. of Education*, 226 Fed. Appx. 446, 448 (6th Cir. 2007) (holding that plaintiff's claims of "meritless charges against him and by 'threatening' his pension" was not a constructive discharge) (cite and internal marks omitted). For instance, a constructive discharge is supported where an employee is subjected to rape by a supervisor. *Champion v. Nationwide Sec.*, 450 Mich. 702, 711; 545 N.W.2d 596, 600 (1996), *overruled on other grounds* 490 Mich. 1, 30 (2011). In addition, resignation is a pre-condition to a constructive discharge. *Ross v. Michigan State University Bd. of Trustees*, 2012 U.S. App. LEXIS 17338 at *6 (6th Cir. 2012) (claim of constructive discharge "meritless" without actual resignation) (cite omitted).

Here, Plaintiffs have failed to plead facts showing working conditions "so intolerable" that they were forced into a voluntary resignation: they were merely placed on paid administrative leave and city officials held a press conference to read a statement explaining

---

[2] See also *e.g., Sullivan v. Brown*, 544 F.2d 279, 283 (6th Cir. 1976) (public teacher's transfer to another school without termination of employment does not give rise to liberty interest claim); *Edwards v. California University*, 156 F.3d 488, 492 (3rd Cir. 1998) (teacher placed on paid administrative leave failed to constitute deprivation of liberty interest, even if "removal from class duties may have further stigmatized him . . . .").

why. And even more critically, they haven't pled—and can't—that they actually resigned; or that they stopped receiving compensation from the city of Battle Creek; or that they stopped receiving their benefits as city employees. Plaintiffs allege the legal conclusion that they were "constructively discharged," but fail to show any facts that would support such a claim. Indeed, the claim is belied by their attorney's letter dated April 4, 2014. See Ex. G. Plaintiffs cannot claim here that they were constructively discharged while outside their lawsuit continued to participate in the City's investigation concerning the status of their employment. See *Rudley v. Bank of America Home Loans Servicing, LP*, 2013 U.S. Dist. LEXIS 76406 at *1 (W.D. Mich. 2013) ("[a] court is not bound to accept unwarranted 'facts' or 'inferences' which 'contradict documentary evidence appended to, or referenced within, the plaintiff's complaint"). Plaintiffs cannot show—based on a theory of constructive discharge—that the City made a public statement in conjunction with their termination from employment.

**B.** **The City's Public Statements Were Not Stigmatizing.**

As noted above, there is no right to a name-clearing hearing, and thus no deprivation of liberty claim, unless public, *stigmatizing statements* are made about an employee in connection with their termination. *Quinn, supra* at 320. Statements that merely reflect an employee's "improper or inadequate performance, incompetence, neglect of duty or malfeasance" are not enough. *Id.* To reach constitutional thresholds, the statement must be "so charged with a moral stigma as to foreclose plaintiffs from seeking alternative employment." *Greer v. Detroit Public Schools*, 507 Fed. Appx. 567, 574 (6th Cir. 2012). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997). The requisite stigma requires "charges of mental illness, fraud, and untruthfulness . . . ." *Lake Michigan*

8

*College Fed. of Teachers v. Lake Mich. Cmty. College*, 518 F.2d 1091, 1097 (6th Cir. 1975); see also *Greer* at 574.  For example, "labeling an unconvicted person as an active shoplifter."  518 F.2d at 1096 (cite omitted).

Here, Plaintiffs fail to plead any stigmatizing statements that would foreclose them from obtaining alternative employment, or for that matter, continued employment in another law enforcement agency.  Their claim is based on the City's statement that Plaintiffs were being "placed on a paid administrative leave" so that the City "could investigate 'an alleged personal relationship [between Saylor and Alonso] that may have created a hostile work environment, thereby having a negative impact on the department and its personnel."  (FAC ¶ 64; see also Ex. C)  As a matter of law, the City's statement is not stigmatizing in a constitutional due process sense, and does not require a name-clearing hearing.  It doesn't charge Plaintiffs with mental illness, fraud, or untruthfulness; criminal activity; or even immoral or improper conduct, such as adultery.  It merely reflects a work-place situation that has provided the motive behind many organizations, private and public, to adopt anti-fraternization and anti-nepotism policies, and the use of a routine administrative tool (*i.e.*, paid leave) pending an internal investigation.

Plaintiffs also base their deprivation of liberty claim on the City's statement that other "job performance issues" would be investigated.  (FAC ¶¶ 64 and 99)  This claim also lacks merit.  Statements regarding inadequate job performance do not give rise to a due process claim. *Quinn, supra* at 320; see also *Johnson v. City of Battle Creek*, 2005 U.S. Dist. LEXIS 40300 at *51-52 (holding that "[t]he reasons for plaintiff's termination were insubordination, violation of the workplace violence policy, and making a false report, which do not qualify as stigmatizing statements.").

### C.   <u>Plaintiffs Had No Right To A Name-Clearing Hearing</u>.

The premise of Plaintiffs' liberty interest claim is that they "were entitled to a name clearing hearing" before the City announced that they had been placed on paid administrative leave.  (FAC at ¶ 102)  But that's upside down.  Even if Plaintiffs were entitled to a name-clearing hearing in connection with a public statement about being placed on paid leave (which they are not), "[a] name-clearing hearing, as the name implies, is a chance for a public employee to clear his name *after* the employment relationship ends."  *Awrey v. Gilbertson*, 2011 U.S. Dist. LEXIS 62004 at *11 (E.D. Mich. 2011) (citing *Ludwig, supra* at 410).

### D.   <u>Plaintiffs Have Failed to Show That Any Statements By Defendants Were Actually False</u>.

The fourth element of a deprivation-of-liberty due process claim is that a plaintiff must show a false statement.  *Quinn, supra* at 320.  Here, in addition to no stigmatizing statement, Plaintiffs have not pled any false statement.

The statement at issue during the so-called "orchestrated media event" is that Plaintiffs had been placed on paid administrative leave so the City could investigate "an alleged personal relationship [between Saylor and Alonso] that may have created a hostile work environment, thereby having a negative impact on the department and its personnel.  Certain job performance issues are included."  (FAC ¶ 64) (quoting City's statement at press conference).  Any allegation that this statement contains falsities is a real head-scratcher.  Plaintiffs' own Complaint admits there is nothing factually false about this statement: they were in a "close," "intimate" relationship (FAC ¶¶ 39-43, 135); the City placed Plaintiffs on paid administrative leave (FAC ¶¶ 1, 2); and the City conducted an internal investigation on the topics addressed (FAC ¶ 114) (noting that the City conducted more than 26 interviews, recorded by a court reporter).  Plaintiffs' Complaint contains noting more than legal conclusions couched as factual allegations:

"the City painted a false and defamatory public image"; "The false and misleading media presentation"; "The false claims against Alonso and Saylor contained in the media report"; "the damaging public broadcast"; "the media attack on plaintiffs' reputation and public image." (FAC ¶¶ 3, 88, 101, 102 and 113)  These fact-bare allegations, however, do not pass *Twombly* and *Iqbal*.  At bottom, there are no false statements about Plaintiffs, or the status of their employment with the City, in the City's press release (Ex. C) concerning their paid leave.

**III.**   **Plaintiffs' Claim for Violation of Due Process Rights Under The Fourteenth Amendment Fails As A Matter Of Law.**

In Count III, Plaintiffs contend that Defendants violated their due process rights by (a) placing them on paid administrative leave and (b) releasing information to the public that purportedly resulted in their constructive discharge—"without giving them notice of the charges against them, an explanation of the employer's evidence against them, and a meaningful opportunity to present their side of the story," *i.e.,* their purported "*Loudermill*" rights.  (FAC ¶¶ 110 and 1111)  It appears that nothing short of a full-evidentiary trial would have satisfied Plaintiffs here; but that's not what the law requires pre-termination.  For the reasons below, this claim fails as a matter of law.

**A.**   **Plaintiffs Have Failed to Plead a Property Interest Protected Under The Fourteenth Amendment.**

To establish a procedural due process violation under the Fourteenth Amendment, a plaintiff must show that a 'life, liberty or property' interest is at stake.  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (cite omitted).  Accordingly, procedural due process analysis involves two steps: "The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures

attendant upon that deprivation were constitutionally sufficient." *Ky. Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiffs Complaint doesn't clear the first step.[3] Public employees have no constitutionally-protected "property" interest in remaining on the job. Stated otherwise, there is no right to procedural due process *before being placed on paid administrative leave*, as was done here. See *e.g., Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 544-555 (1985) (public employer "can avoid the [procedural due process] problem by suspending with pay"); *Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("As the Supreme Court stated in [*Loudermill*], however, the suspension of [even] a tenured public employee *with pay* . . . avoid[s] due process problems entirely.") (internal quote marks omitted) (emphasis in original); *Calovecchi, supra* at *15-16 (Sergeant had no basis to claim "that his removal from duty [with pay] implicated a property interest."). Under these authorities, Plaintiffs' claim that they were entitled to a *"Loudermill* hearing" *before* being placed on paid-administrative leave is frivolous and fails as a matter of law.

Plaintiffs' purported constructive discharge is equally unavailing of a Fourteenth Amendment procedural due process claim. For the reasons above, Plaintiffs have failed to allege any facts that would support a claim of constructive discharge because (a) they have not pled "intolerable" conditions, and (b) they have not, and cannot, allege that they actually resigned. See *Williams,* 226 Fed. Appx. at 448 and *Ross, supra* at *6.

---

[3] The City maintains that Plaintiffs, as non-represented employees, were at-will and that they have failed to plead facts showing just cause employment. (See Section VI (A) below). As at-will employees, they have no property interest protected under the Fourteenth Amendment. See *Johnson v. City of Battle Creek*, 2005 U.S. Dist. LEXIS 40300 at *42-43 (W.D. Mich., 2005) (citing *Brown v. City of Niota*, 214 F.3d 718, 722 (6th Cir. 2000)) and *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 408 (6th Cir. 1997). For purposes of this motion, however, Defendants assume that Plaintiffs are just cause employees. For the reasons herein, they still fail to plead a procedural due process claim as a matter of law.

**B.**       **Plaintiffs Were Provided the Amount of Process Required**.

Setting aside for the moment the legal defect noted above, and even though Plaintiffs filed this lawsuit and then amended it well before they were actually terminated (see ECF 1 and 8), the City nonetheless continued its investigation (see FAC ¶ 114) and provided Plaintiffs, while maintaining their employment was at-will, with a process that would satisfy *Loudermill*.

In *Loudermill*, the Supreme Court instructed that "the pretermination hearing, though necessary, need not be elaborate" and that "something less than a full evidentiary hearing is sufficient . . . ." *Id.* at 545 (internal quote marks and cites omitted).  Due process in this context requires "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546.  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*  The pre-termination process is merely an "initial check" on the decision to terminate, not a process to "definitively resolve the propriety of the discharge." *Id.* at 545-546.

The allegations in Plaintiffs' Complaint actually show that after being placed on paid leave, they were provided the essential elements of due process set out in *Loudermill*.  By letter dated April 2, 2014, they were given notice of the charges against them and the evidence gathered from the investigation.  (See FAC ¶ 119 and Exs. E and F).  That notice need not provide "exacting specificity," just notice "sufficient" to "prevent surprise at the termination and its justification." *Devlin v. Kalm*, 531 fed. Appx. 697, 708 (6th Cir. 2013).  Plaintiffs then got to present their "side of the story," and they did in a 17-page letter dated April 4, 2014, from their attorney that responded to each charge.  (See FAC ¶ 120 and Ex. G).  *Loudermill* requires nothing more. *Devlin, supra* at 708 (Plaintiff's argument that he was deprived of due process

before his termination "is belied by the lengthy letter he sent to the defendants prior to his disciplinary conference, which demonstrates his understanding of the reasons for his termination.").

The due process analysis should end there.  But Plaintiffs' Complaint is also littered with numerous asserted *"Loudermill* rights" that do not exist.  They claim a pre-termination right to: (i) a "representative" at the interviews conducted as part of the City's internal investigation (FAC ¶ 114); (ii) a hearing before a neutral decision-maker (FAC ¶¶ 115 and 118); (iii) the presence of counsel at their interviews conducted as part of the City's internal investigation (FAC ¶ 116); and (iv) all of the documents that support their termination (FAC ¶ 117).  But the pre-termination "initial check" does not require any of these.  See, *e.g., Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) ("[F]ull evidentiary hearing not required prior to termination"; "right of reply" is sufficient; no right to "neutral and impartial decisionmaker."); *Speiser v. Engle*, 107 Fed. Appx. 459, 461 (6th Cir. 2004) (no right to counsel present at pre-termination hearing).

In sum, Plaintiffs' complaint that they weren't provided a right to an attorney, a neutral decision-maker, and every document supporting the City's initial decision to terminate, go far beyond what *Loudermill* requires, and thus do not state a Fourteenth Amendment Due Process claim as a matter of law.  They admittedly were provided a "right to reply"—and they did.  The procedural "initial check" on the City's decision to terminate (after this lawsuit) was satisfied.

**IV.    Plaintiffs' Substantive Due Process Claim Fails as a Matter of Law Because Their Public Employment Is Not A Constitutionally-Protected Fundamental Interest And They Have Not Pled Conduct That "Shocks the Conscience".**

In Count III, Plaintiffs claim that "as public sector employees, with a vested property interest in their employment, [they] enjoyed a Constitutional right to non-arbitrary treatment" and that Defendants violated this right by terminating their employment "arbitrarily."  (FAC, ¶¶

127 and 128) On its face, these allegations fail to state a substantive due process claim under the United States Constitution.

The substantive due process component of the Fourteenth Amendment "forbids the government [from infringing] certain 'fundamental' liberty interests . . . ." *Reno v. Flores*, 507 U.S. 292, 302 (1993). Modern substantive due process jurisprudence demands a "careful description of the asserted fundamental liberty interest," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), reflecting the Supreme Court's "continuing reluctance to treat the Fourteenth Amendment as a font of tort law," *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (quote marks omitted). Accordingly, substantive due process "is not concerned with the garden variety issues of common law contract," but rather a "far narrower" list of interests "implicit in the concept of ordered liberty." *Hange v. City of Mansfield,* 257 Fed. Appx. 887, 896 (quoting *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990)). Interests "so rooted in the traditions and conscience of our people as to be ranked fundamental." *Id.*

Here, Plaintiffs' alleged constitutional right—*i.e.,* to be free from "arbitrary" termination of their public employment—doesn't fall within the narrow list of rights implicating due process protection. The Sixth Circuit has consistently held that garden variety contract issues like the employment matter before the Court now do not give rise to a constitutional cause of action; specifically rejecting public employees' claims that their "*arbitrary suspensions* . . . deprived them of their substantive due process right to employment." *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1350 (6th Cir. 1992) (emphasis added); See also *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) ("[T]he termination of public employment does not constitute a denial of substantive due process."); *Hange, supra* at 897 (Plaintiff's "right to enjoy the grievance procedure outlined in the CBA and his right to termination for cause are simply not

so vital that neither liberty nor justice would exist if [they] were sacrificed.") (quote marks omitted).   As a matter of law, Plaintiffs' Complaint fails to allege the deprivation of a "fundamental" right.

A second aspect of substantive due process "is the right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citations omitted).   "[B]ut only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Hange, supra* at 897 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).   The conduct must be "so brutal and offensive that it did not comport with traditional ideas of fair play and decency." *Hange* (cite omitted).   In *Lewis*, the Supreme Court noted that "for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience" and "violated the 'decencies of civilized conduct.'" *Id.* at 846 (for example, the forced pumping of a suspect's stomach to retrieve potential evidence) (citing *Rochin v. California*, 342 U.S. 165, 172-173 (1952)).   "[A] Plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle." *Cantanzaro v. Harry*, 848 F.Supp.2d 780, 798 (W.D. Mich. 2012).[4]

Conclusory labels aside, Plaintiffs' allegations in this case are worlds apart from the "oppressive," "brutal," "offensive," "egregious," "conscience-shocking" type of arbitrary conduct by government officials necessary to invoke substantive due process protection.   At bottom, this matter involves a common employment disciplinary matter.   Absent conduct that shocks the conscience or infringes upon a fundamental right, courts routinely dismiss such claims. See, *e.g., Ziem v. Zehnder*, 2005 U.S. Dist. LEXIS 46026 at *31-34 (E.D. Mich. 2005) (dismissing claim based on allegations that a city department head "used his executive authority

---

[4] In *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003), the Sixth Circuit noted that the "arbitrary and capricious" aspect of substantive due process "is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard."

to single out Plaintiff and to have her reassigned for punitive reasons (i.e., the improper motive of retribution for the falling out between the Director's son and Plaintiff)"); *EJS Properties, LLC v. City of Toledo,* 698 F.3d 845, 862 (6th Cir. 2012) ("solicitation of bribe by a public official does not shock the collective conscience the way that pumping a detainee's stomach does."); *Mileski v. City of Barberton*, 2006 U.S. Dist. LEXIS 15837, *22-23 (N.D. Ohio 2006) (internal investigation of suspected theft by Plaintiff and anonymous allegation that Plaintiff didn't meet employment-residency requirement did not shock the conscience, even if conducted out of malice); *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (allegations of police harassing the Plaintiff were not so "abhorrent" so as to shock the conscience).  The Court should reject, as a matter of law, Plaintiffs' effort to convert an astonishingly routine employment tool—paid administrative leave—into a federal constitutional violation.

**V.      Plaintiffs' Claim for Violation of First Amendment Privacy and Association Rights Fails as a Matter of Law Because The City Had a Rational Basis to Prohibit An Intimate Relationship Between Two of the Highest Ranking Officers in the Battle Creek Police Department.**

In Count IV, Plaintiffs claim that Defendants violated their First Amendment right by terminating "their employment because of [their] intimate relationship."  (FAC ¶ 135)  Plaintiffs have failed to plead a plausible constitutional claim under the First Amendment.

The Constitution protects freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment and the First Amendment.  See *Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984); see also *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003).  The Supreme Court has concluded that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because the role of such relationships in safeguarding the individual freedom that is central

17

to our constitutional scheme." *Roberts* at 617-618. In addition to marriage, this protection covers non-marital romantic relationships. *Akers, supra* at 1039-1040 (cite omitted).

But the constitutional inquiry does not end at whether a protected relationship is at issue. If governmental action has a "direct and substantial interference with an intimate association," the action is subject to strict scrutiny. *Id.* at 1040 (internal quote marks omitted). If not, it is subject to rational basis review. *Id.* A "direct and substantial interference" occurs only if "those affected by the rule are absolutely or largely prevented from marrying [or dating or associating with] a large portion of the otherwise eligible population of spouses." *Id.* (for example, a total ban on marriage outside one's ethnic group). Anti-nepotism and anti-fraternization policies do not meet this threshold. See *e.g., Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004) (holding that policy prohibiting dating between police officers of different ranks did not directly and substantially burden the right to intimate association). "[V]irtually every court to have confronted a challenge to an anti-nepotism policy on First Amendment, substantive due process, equal protection, or other grounds has applied rational basis scrutiny." *Beecham v. Henderson County*, 422 F.3d 373, 378 (6th Cir. 2005)(internal marks and cite omitted) (rational basis review of county employee's termination for involvement in a romantic relationship with spouse of another county employee).

Under these standards, rational basis review applies here. Plaintiffs appear to concede this point, alleging that there was "no rational basis" (FAC ¶ 136) for the City's concern about an intimate relationship between the Deputy Chief of Police and the Police Inspector. The City, however, did have a rational basis for its concern about an intimate relationship between individuals holding two of the highest offices in the BCPD.

18

Rational basis review is satisfied "so long as there is a plausible policy reason for the decision." *Beecham, supra* at 378 (cite and internal marks omitted).  "It is entirely irrelevant for constitutional purposes whether the plausible reason *in fact motivated the policymaker.*"  *Id.* (emphasis added) (cite omitted).  The justifications for the governmental aim need not be "overwhelming," just "rational in their tendency to further a legitimate government aim." *Montgomery v. Carr*, 101 F.3d 1117, 1130-1131 (6th Cir. 1996) (upholding anti-nepotism policy).

Here, the legitimate governmental and employment justifications for not allowing an intimate personal relationship between the Deputy Chief of Police and Police Inspector in the City's police department are overwhelming and well-recognized by the courts in the Sixth Circuit, including, without limit: avoiding disruption in the workplace (*Beecham, supra* at 378); "avoiding potential conflicts," "avoiding sexual harassment suits," "preventing deterioration of workplace morale," "reducing favoritism *or even the appearance of favoritism*" (*Anderson* at 882-883) (emphasis added); "avoiding friction and possibly violence in the workplace," "cutting down on social fraternization," "minimizing lost productivity," and avoiding couples tendency to "confront adversity as a unit" (*Montgomery, supra* at 1130).

The Western District of Michigan articulated the special aggravated concerns that arise from close personal relationships in a paramilitary organization:

> Sexual affairs have caused government ministers to lose power, corporate presidents to resign, spouses to commit murder, not to mention dissention and disruption in offices and organizations.  This type of behavior *is of even greater public concern when it involves a paramilitary organization such as a police department*.  The allegation against the [Chief of Police] could directly relate to the morale, leadership, and teamwork of the Battle Creek Police Department and its officers.

19

*Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 815 (W.D. Mich., 1999) (Hon. Gordon J. Quist) (holding that plaintiff's speech concerning an alleged affair between the Chief of Police and the wife of another member of the department related to a public concern) (emphasis added).

Based on this case law, the City had a rational basis to prohibit an intimate relationship between individuals holding two of the highest offices in its police department.  Count V does not state a plausible First Amendment claim for intrusion on an intimate association.

**VI.    Plaintiffs' Claim for Breach of Just Cause Employment Contract Should Be Dismissed for Failure to State a Claim and Because There Is No Material Question of Fact That They Were Terminated For Cause.**

      **A.    The Complaint Does Not Adequately Allege Just Cause Employment.**

In Count V, Plaintiffs allege, in conclusory terms, that they were orally promised just cause employment with the City.  (FAC ¶¶ 89 and 90)  They also appear to suggest that the "system of progressive discipline" set forth in the City's Administrative Code creates an implied contract of just cause employment.  Neither are sufficient to support their claim to just cause employment.

Under Michigan law, employment relationships "are presumptively terminable at the will of either party for any reason or for no reason at all."  *Haywood v. Schwan's Sales Enters.*, 1996 U.S. Dist. LEXIS 4678 at *6 (W.D. Mich. 1996) (citing *Rood v. General Dynamics Corp.*, 444 Mich. 107, 116-117; 507 N.W.2d 591 (1993)).  This presumption may be overcome, however, by an "express agreement, either written or oral, regarding job security" or  "where an employer's policies and procedures instill a 'legitimate expectation' of job security in the employee."  *Lytle v. Malady*, 458 Mich. 153, 164; 579 N.W.2d 906 (1998).  To show an express agreement, the promise of job security must be "clear and unequivocal."  *Id.* at 171.  Of central importance, the employer must make the job-security promise *in the context of "an actual negotiation"* with the

employee.  *Id.* at 172; see also *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 641; 473 N.W.2d 268 (1991) (finding no "mutual assent" for just cause employment because, in part, the "plaintiff did not engage in preemployment *negotiations* regarding security") (emphasis added).

Here, Plaintiffs allege that they couldn't be terminated without just cause because Jackie Hampton, the then-Chief of Police, "repeatedly advised" that "they could not be terminated from employment without just cause."  (FAC ¶ 89)  Even accepting this allegation as true, it fails to show, as required under *Twombly* and *Iqbal*, facts demonstrating mutual intent to create a contract of just cause employment.  The allegation simply begs the question: in what context were Plaintiffs allegedly "repeatedly advised" that their employment was just cause?  Absent factual allegations showing that these purported promises were made during *pre-employment negotiations* between Plaintiffs and the City concerning the status of their jobs, they fail as a matter of law to establish just cause employment.

Plaintiffs also appear to claim that the City's system of progressive discipline in its Administrative Code created an implied contract of just cause employment.  (FAC ¶ 91) (Section 296.02 of the City's Administrative Code)  That exact claim, however, was rejected by the Western District of Michigan.  In *Johnson v. City of Battle Creek, supra*, the Superintendent of Streets & Parks, a non-represented position like Plaintiffs here, asserted, among other claims, that he was terminated in violation of his *Loudermill* rights.  *Id.* at *40-49.  In an attempt to establish a constitutionally-protected property interest in his job, plaintiff argued that the City's policies, including its system of progressive discipline under Section 296.02 of the City's Code, created a legitimate expectation of just cause employment.

This Court (Hon. Mag. Joseph G. Scoville) disagreed, holding that the City's Administrative Code did not create a reasonable expectation of just-cause employment:

Section 296.02 establishes a system of progressive discipline to ensure fairness in the workplace. Section 296.03 establishes a nonexclusive list of dischargeable offenses which are "at the discretion of the department head and the director of Employee Relations," grounds for termination. The list is expressly not exhaustive, as it includes 'any other offense of equal magnitude to the above." Chapter 296 of the Administrative Code *does not state or imply that employees may be terminated only for just cause*.

*Id.* at *46-47. Finding his employment at-will, the Court dismissed the plaintiff's due process claim. *Id.* at *49.

Based on the above case law, any claim by Plaintiffs that the City's system of progressive discipline creates just cause employment is completely without merit.

**B.** **There Is No Question of Fact That The City Had Just Cause to Terminate Plaintiffs' Employment.**

The City maintains that as non-represented employees, Plaintiffs' employment was at-will. But even assuming it was just cause, the City should be granted summary judgment. Because the Court is very familiar with Rule 56's summary judgment standard of review, it is not restated. *Delaney v. UPS*, 2008 U.S. Dist. LEXIS 49103 at *5-7 (W.D. Mich. 2008). For the reasons below, there is no genuine issue of any material fact that the City had just cause to terminate Plaintiffs' employment.

Courts routinely find as a matter of law that a termination was for just cause where there is no dispute as to the employee's misconduct. See, *e.g., Freeman v. Unisys Corp.*, 898 F. Supp. 485, n 3 (E.D. Mich. 1995) (noting that plaintiff's wrongful discharge claim would fail, even if just cause employees, where it was determined that plaintiff "had misappropriated company property and falsified documents to conceal the misappropriation"); *Rush v. United Technologies*, 930 F.2d 453, 455 (6th Cir. 1995) (granting employer summary judgment because "falsification of expense account records is a serious breach of responsibility on the part of an employee and constitutes just cause for termination"); *Anderson v. Union Pac. R.R. Co.*, 359

22

Fed. Appx. 800, 801 (9th Cir. 2009) ("deliberate attempts" to influence employer's investigation good cause for termination as a matter of law); and *Kurincic v. Stein, Inc.*, 30 Fed. Appx. 420, 426 (6th Cir. 2002) (submission of false time sheet was just cause to terminate, as a matter of law, even though the employee later claimed it was an innocent mistake: "Such evasive conduct, in our view, makes [plaintiff's] subsequent claim of innocence so unbelievable" that no reasonable juror could accept it as true).

In this case, Plaintiffs admit that immediately after being placed on paid administrative leave—and knowing that the City was investigating their personal relationship and the effect it had on the BCPD and its personnel—Plaintiffs remotely wiped their city-issued iPads. (See Exs. A and B, pp. 15 and 11, respectively). This misconduct, alone, provided just cause for their terminations. Such behavior—indeed obstruction of a City investigation—is not consistent with the relationship between the City and any of its employees, but especially two of the highest ranking officers in the City's law enforcement agency. As a matter of law, it is sufficient cause for their terminations.

Plaintiffs' obstruction was also dischargeable under the City's Administrative Code and the City's Electronic Communications Policy. Section 296.03 of the Code provides a non-exclusive list of dischargeable offenses, including: (i) the "abuse, misuse or deliberate destruction in any manner of City or employee property," (ii) "[m]isuse or removal of . . . any City record of information of any nature," and (iii) "[a]ny other offense of equal magnitude to the above." (See subparts (j), (s) and (x) of Section 296.03). The Electronic Communications Usage Policy (attached hereto as Ex. L) states, in pertinent part, that "Employees should have no expectation that any information contained on [city-issued electronic equipment] is private or confidential," and that "[s]uch communications systems are City property and the City reserves

the right to monitor and retrieve any voice data or digital messages on any system or equipment," and that "[e]mployees must permit such access."  One stated reason for the City to gain access to an employee's electronic device is "the purpose of investigating complaints made by or about city employees . . . ."  *Id.*  The policy warns that employees who violate it "are subject to discipline up to and including discharge." *Id.*  An admitted policy violation is cause for discharge.  See *Bolen v. E.I. Du Pont de Nemours & Co.*, 1993 U.S. App. LEXIS 1970 at *18 (6th Cir. 1993) (summary judgment for employer proper where employee admitted act which was violation of company policy).

Here, Plaintiffs obstructed the City's investigation by remotely wiping their iPads immediately upon being placed on administrative leave.  They admit it, period.  It violates a City ordinance and policy, period.  Accordingly, the Court should grant the City summary judgment on their claim for violation of just cause employment (assuming such employment for purposes of this motion only).

**VII.**   **Plaintiffs' Federal Stored Communications Act Claim Should Be Dismissed as Moot and Because It Fails as a Matter of Law.**

In Count VI, Plaintiffs claim that the City violated the federal Stored Communications Act (SCA), 18 U.S.C. §2701 *et seq.*, by serving a records subpoena on Apple (before their admissions) to determine when and how Plaintiffs wiped the iPads.  They ask "to enjoin the production" of these records (see FAC p. 24), and filed a motion to quash the subpoena (ECF 3).  Plaintiffs' claim for injunctive relief is moot and should be dismissed under Rule 12(b)(1).  Plaintiffs concur.

Mootness is an Article III jurisdiction issue.  Courts "lack jurisdiction to hear matters that have lost their character as a present, live controversy, and are thereby moot.  *Gray v. Fed. Bureau of Prisons*, 2013 U.S. Dist. LEXIS 133849 at *3 (W.D. Mich. 2013) (internal quote

24

marks and cites omitted).  Here, the City withdrew its subpoena to Apple after Plaintiffs filed this lawsuit, agreeing to pursue any discovery thereafter under the Federal Rules.  (See Email from Attorney Sysol to Apple attached as Ex. M).  Plaintiffs then withdrew their motion to quash. (ECF 7)  There is no longer a "present, live controversy" concerning the subpoena to Apple.

Count VI also fails to state a claim because it doesn't allege the essential element for a violation under the SCA; that is, that the City actually *obtained* stored electronic communications.  See 18 U.S.C. §2701(a).  Moreover, Plaintiffs' complaints at ¶¶ 146 and 147 of the FAC that the City used a "non-judicial," "administrative subpoena" without a search warrant or notice to them is legally deficient.    The SCA expressly allows *administrative subpoenas* for non-content information from ISPs, which is what the City sought here (see Ex. N), without notice to the subscriber.  See 18 U.S.C. §2703(2) and (3).

## CONCLUSION

Defendants ask the Court to dismiss Plaintiffs' First Amended Complaint, in its entirety, with prejudice, and also to grant summary judgment in favor of Defendants as to Count V.

Respectfully submitted,

BATTLE CREEK CITY ATTORNEY'S OFFICE
*Attorneys for Defendants*

Dated:  June 12, 2014                    By:____/s Brad H. Sysol_____

Jill H. Steele
Brad H. Sysol
10 N. Division Street, Ste. 207
Battle Creek, Michigan  49016-1717
Telephone:  (269) 966-3385
jhsteele@battlecreekmi.gov
bhsysol@battlecreekmi.gov

25